UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LIJUNG EDWARDS-YU,

                Plaintiff,

      v.

LOUIS DEJOY,

                Defendant.

Case No. C21-156-RSM-MLP

REPORT AND RECOMMENDATION

       This matter is before the Court on Defendant Louis DeJoy's, Postmaster General of the United States Postal Service ("USPS"), Motion for Summary Judgment ("Defendant's Motion"), filed on July 11, 2022. (Def.'s Mot. (dkt. # 27).) On August 1, 2022, Plaintiff Lijung Edwards-Yu filed an opposition (Pl.'s Resp. (dkt. # 41)) and a Second Amended Complaint (Second Am. Compl. ("SAC") (dkt. # 44)). USPS filed a reply on September 6, 2022. (Def.'s Reply (dkt. # 46).) Having considered the parties' submissions, the governing law, and the balance of the record, the Court recommends Defendant's Motion (dkt. # 27) be GRANTED.

# I.    BACKGROUND

## A.    Factual Background

In an August 2022 declaration, Ms. Edwards-Yu identified herself as a "64-year-old Asian woman of Chinese national origin." (Pl. Decl. (dkt. # 40) at ¶ 2.) She had been employed by USPS for 17 years when she began working as a "full-time EAS Supervisor" in November 2016. (*Id.* at ¶¶ 3-4.) Initially, she worked on "Tour 3, the evening shift," supervised by Romeo Fontanilla. (*Id.* at ¶ 5.)

According to Ms. Edwards-Yu's declaration, around December 2018, Mr. Fontanilla began making "unwelcome comments" about Ms. Edwards-Yu's age, including in front of other people, for weeks. (Pl. Decl. at ¶ 9.) After Ms. Edwards-Yu asked him to stop, he "yelled at [her] in the workplace and singled [her] out on multiple occasions." (*Id.*)

On December 19, 2018, Ms. Edwards-Yu transferred to "Tour 2, the day shift," supervised by Minhtrung (Hugo) Vo.[1] (Pl. Decl. at ¶ 6.) After a few months of working for Mr. Vo, Ms. Edwards-Yu claims he too began yelling at her and frequently referencing her age. (*Id.* at ¶ 11.) He also commented on her use of leave pursuant to the Family and Medical Leave Act ("FMLA"). Around April 2019, Mr. Vo told her, "If I knew you have FMLA, I would not have hired you." (*Id.*) Mr. Vo began accusing her of "failures that were not [her] fault," treatment not directed at other EAS supervisors who were younger and not Asian. (*Id.* at ¶¶ 10-11.)

### 1.    Letters of Warning

On June 19, 2019, Mr. Vo issued a "Proposed Letter of Warning in Lieu of a 7-Day Suspension." (June 2019 Letter (Cavanaugh Decl., Ex. A (dkt. # 29-1)).) The letter charged Ms. Edwards-Yu with "fail[ing] to schedule a dock clerk" but acknowledged that she had "tried to

---

[1] Another portion of Ms. Edwards-Yu's declaration states she transferred in December 2019, which appears to be a typographical error. (*See* Pl. Decl. at ¶ 11.)

find a dock clerk[.]" (*Id.* at 2-3.) The letter also charged that she did not timely process a pay adjustment and perform an investigative interview, which she said was due to being busy, and that she "suggested to an employee to falsify [time records]." (*Id.*)

On August 11, 2019, Mr. Vo issued another "Proposed Letter of Warning in Lieu of a 7-Day Suspension." (August 2019 Letter (Cavanaugh Decl., Ex. B (dkt. # 29-2)).) The letter charged Ms. Edwards-Yu with failing to obtain a concurrence on an employee removal, while acknowledging that Ms. Edwards-Yu stated she "could not recall" the precise instructions. (*Id.* at 2-3.) The letter also charged Ms. Edwards-Yu with failing to correct an employee's leave and properly disapprove an employee's leave, both of which she said she had asked fellow supervisor Anna Marrero to do. (*Id.*)

On October 20, 2019, Mr. Vo issued a "Proposed Letter of Warning in Lieu of a 14-Day Suspension." (Oct. 2019 Letter (Cavanaugh Decl., Ex. C (dkt. # 29-3)).) The letter charged Ms. Edwards-Yu with failure to notify him of delayed mail, failure to complete a task that she attributed to short staffing and a machine breakdown, failure to complete scheduling due to being too busy, improperly permitting leave due to not checking records, and improperly scheduling an employee due to being too busy. (*Id.* at 2-4.)

On October 31, 2019, Mr. Messenger issued a "Letter of Decision" upholding the June 2019 Letter. (Cavanaugh Decl., Ex. D (dkt. # 29-4).) On January 20, 2020, USPS's regional human resources manager issued a final decision on the June 2019 Letter, dismissing charges related to failure to timely process a pay adjustment and conduct an investigative interview, upholding the other charges, and reducing the "Letter of Warning in Lieu of a 7-Day Suspension" to a "Letter of Warning." (Cavanaugh Decl., Ex. E (dkt. # 29-5).)

1

2.    *Complaints of Harassment*

2

After Mr. Vo issued disciplinary letters on multiple occasions, Ms. Edwards-Yu filed an

3

informal Equal Employment Opportunity ("EEO") complaint in August 2019. (Pl. Decl. at

4

¶¶ 13-17.) Around September 2019, Mr. Vo confronted her, visibly upset, about the EEO

5

complaint. (*Id.* at ¶ 18.) He continued issuing disciplinary letters. (*Id.*)

6

Ken Messenger was the direct supervisor for both Mr. Fontanilla and Mr. Vo. (Pl. Decl.

7

at ¶ 7.) After Ms. Edwards-Yu appealed the disciplinary letters and told Mr. Messenger that Mr.

8

Vo had harassed her, Mr. Messenger upheld the discipline Mr. Vo imposed. (*Id.* at ¶ 22.) Ms.

9

Edwards-Yu claims both Mr. Vo and Mr. Fontanilla subjected her to "constant yelling,

10

intimidation, and investigations[.]" (*Id.* at ¶ 23.) Mr. Vo even called her on her personal cell

11

phone during her vacation to yell at her. (*Id.* at ¶ 15.) Ms. Edwards-Yu was "assigned to operate

12

the entire facility on [her] own when other supervisors were not." (*Id.* at ¶ 23.)

13

Beginning September 19, 2019, Ms. Edwards-Yu took FMLA leave "to escape and

14

recover from the harassment" until March 29, 2020. (Pl. Decl. at ¶ 19.) She then requested

15

"reasonable accommodation," which was denied, and retired early on June 30, 2020. (*Id.* at

16

¶¶ 19-20, 25.)

17

**B.    Causes of Action**

18

Ms. Edwards-Yu brought this action on February 8, 2021. (Dkt. # 1.) In her Second

19

Amended Complaint, Ms. Edwards-Yu alleges causes of action under: (1) Title VII of the Civil

20

Rights Act of 1964 for disparate treatment based on race, gender, and national origin; hostile

21

work environment; and retaliation; (2) the Rehabilitation Act of 1973 for failure to accommodate

22

disability and disparate treatment; and (3) the Age Discrimination and Employment Act

23

REPORT AND RECOMMENDATION - 4

1  ("ADEA") for hostile work environment, retaliation, and disparate treatment. (SAC at ¶¶ 6.1-
2  6.15.)

## II.    DISCUSSION

### A.    Summary Judgment

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing the Court "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. *Id*. at 585-87.

Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 257. It is the nonmoving party's responsibility to "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoted source omitted). The Court need not "scour the record in search of a genuine issue of triable fact." *Id.* (quoted source

omitted); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). Nor can the nonmoving party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); *see McElyea v. Babbitt*, 833 F.2d 196, 197-98 n.1 (9th Cir. 1987) (per curiam).

## B. Discrimination

USPS contends Ms. Edwards-Yu's disparate treatment claims under Title VII, the Rehabilitation Act, and the ADEA all must be dismissed because she fails to present evidence that her protected status was a motivating reason for any adverse employment action. (Def.'s Mot. at 11-13.)

Title VII makes it unlawful for a covered employer "to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Rehabilitation Act prohibits discrimination "because of . . . disability." *See Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1005 (9th Cir. 2007), *superseded on other grounds by statute as recognized in Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 434 (9th Cir. 2018). The ADEA makes it unlawful for an employer to discriminate against an employee "because of such individual's age[.]" 29 U.S.C. § 623(a)(1).

Ms. Edwards-Yu contends she has offered sufficient evidence of discriminatory animus based on comments about her age and FMLA leave, yelling, and unwarranted discipline when similarly situated employees who were not in the same protected classes did not face the same treatment. (Pl.'s Resp. at 13-17.)

1          *1.      Title VII Claim*

2          Establishing disparate treatment under Title VII requires "evidence that gives rise to an

3    inference of unlawful discrimination, either through the framework set forth in *McDonnell*

4    *Douglas Corp. v. Green* or with direct or circumstantial evidence of discriminatory intent."

5    *Freyd v. Univ. of Oregon*, 990 F.3d 1211, 1228 (9th Cir. 2021) (citing *McDonnell Douglas Corp.*

6    *v. Green*, 411 U.S. 792 (1973)).

7          At the first step of the *McDonnell Douglas* burden-shifting framework, the plaintiff must

8    make a prima facie case of discrimination by showing that: (1) she is a member of a protected

9    class; (2) she performed her job satisfactorily; (3) she experienced an adverse employment

10   action; and (4) similarly situated individuals outside her protected class were treated more

11   favorably. *Freyd*, 990 F.3d at 1228. "Once a prima facie case has been shown, the burden then

12   shifts to the defendant to show a legitimate, nondiscriminatory reason for the challenged

13   actions." *Id*.

14         Here, Ms. Edwards-Yu does not present direct or circumstantial evidence of

15   discrimination, but contends she has established a prima facie case through the *McDonnell*

16   *Douglas* framework. (Pl.'s Resp. at 11-13.) With respect to the first element, there is no dispute

17   that Ms. Edwards-Yu is a member of protected classes based on race, sex, and national origin.

18   (*See* Pl. Decl. at ¶ 2.)

19                    i.      Satisfactory Job Performance

20         Ms. Edwards-Yu erroneously states that USPS "do[es] not dispute that Plaintiff . . .

21   performed her job satisfactorily." (Pl.'s Resp. at 11.) USPS contends it issued three Letters of

22   Warning reflecting poor performance. (Def.'s Reply at 2.)

23

Ms. Edwards-Yu stated in her declaration that Mr. Vo issued the June 2019 Letter "for things that were not [her] fault or were entirely out of [her] control."[2] (Pl. Decl. at ¶ 13.) She stated that she "provided legitimate explanations and rebuttals to the allegations" in the October 2019 Letter to Mr. Vo.[3] (*Id.* at ¶ 18.) Other than these general denials, Ms. Edwards-Yu does not offer evidence that these letters do not accurately reflect poor performance.

The letters reflect reasons that Ms. Edwards-Yu gave Mr. Vo to explain some of the instances of poor performance. Nevertheless, the letters indicate that Mr. Vo decided these reasons did not excuse the performance issues. For example, in the June 2019 Letter, Mr. Vo acknowledged that Ms. Edwards-Yu suggested an employee falsify time records "to avoid a grievance" but concluded that her actions were "not consistent with our handbooks and manuals" and "inconsistent with the Postal Service's core values and cannot be tolerated." (June 2019 Letter at 3.) In the October 2019 Letter, Mr. Vo acknowledged that Ms. Edwards-Yu stated she was "too busy and forgot about" scheduling her employees, but sustained the charge because her "failure to follow [his] instructions has led to scheduling issues in conflicts that could potentially lead to overtime, as well as grievance liability." (Oct. 2019 Letter at 3.) Ms. Edwards-Yu has not presented any evidence contradicting the evidence in the Letters of Warning of multiple instances of poor performance.

---

[2] Ms. Edwards-Yu also stated that, in the August 2019 Letter, Mr. Vo "included alleged misconduct that I was already disciplined for in the June 19 discipline (Charge 1)." (Pl. Decl. at ¶ 16.) Even if one charge was repetitive, numerous charges remain.

[3] Ms. Edwards-Yu also stated that Mr. Vo accused her of misconduct including "an issue where [Mr.] Fontanilla fabricated the situation[,]" but provides no facts to support this conclusion. (Pl. Decl. at ¶ 18.) A "conclusory" affidavit, "lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *F.T.C. v. Publ'g Clearing House, Inc*., 104 F.3d 1168, 1171 (9th Cir. 1997). For purposes of summary judgment, the Court disregards conclusory statements without supporting evidence.

1    Ms. Edwards-Yu has not presented evidence showing that she performed her job

2    satisfactorily. She thus fails to meet this element of a prima facie case of discrimination.

3              ii.    Adverse Action

4    "[A]n adverse employment action is one that materially affects the compensation, terms,

5    conditions, or privileges of employment." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th

6    Cir. 2008) (cleaned up). Ms. Edwards-Yu argues the "Letter of Warning, 7-day suspensions, and

7    14-day suspension were all adverse employment actions[.]"[4] (Pl.'s Resp. at 12.) USPS contends

8    the letters were not adverse actions because none of them "impact[ed] or materially affect[ed] the

9    terms and conditions of her employment." (Def.'s Mot. at 17.)

10    Ms. Edwards-Yu's argument relies on *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374

11    F.3d 840, 848 (9th Cir. 2004). In *Fonseca*, the Ninth Circuit held that even though a suspension

12    was reduced to a warning letter, "the warning letter still constitutes an adverse employment

13    action, particularly since Sysco publicizes all discipline to all its employees." 374 F.3d at 848.

14    The court cited *Yartzoff v. Thomas*, 809 F.2d 1371 (9th Cir. 1987) for the proposition that "[a]

15    warning letter [can] be considered an adverse employment action." *Fonseca*, 374 F.3d at 847.

16    Here, the Court concludes that *Fonseca* is distinguishable because there is no evidence

17    that USPS publicizes all discipline to all employees, and because the Supreme Court has since

18    clarified that adverse actions encompass a narrower range of conduct in disparate treatment

19    claims than in retaliation claims. Without the extra sting of a publicized reprimand, the Letters of

20    Warning here do not materially affect the terms and conditions of employment. Furthermore, the

21    holding in *Yartzoff* applied to retaliation claims rather than disparate treatment claims. *Yartzoff*,

22    809 F.2d at 1375-76. *Fonseca* was decided before the Supreme Court held that adverse actions

23

---

[4] Although Ms. Edwards-Yu refers by way of shorthand to "suspensions," no evidence in the record indicates that she was actually suspended from work or that her pay was withheld.

REPORT AND RECOMMENDATION - 9

are defined more broadly for retaliation than substantive discrimination claims. *See Burlington*

*N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006) (Specific words in the "substantive

provision . . . limit the scope of that provision to actions that affect employment or alter the

conditions of the workplace. No such limiting words appear in the antiretaliation provision.").

Ms. Edwards-Yu next argues that each warning letter "set her up for a more severe

penalty the next time USPS decided to discipline her." (Pl.'s Resp. at 12.) However, although the

letters threatened later impacts for potential future infractions, the letters did not themselves

actually impact her conditions of employment.

Ms. Edwards-Yu also stated in her declaration that each letter "caused [her] severe stress

[and] made [her] fear for [her] job[.]" (Pl. Decl. at ¶ 21.) An adverse employment action is not

determined by the psychological effect on a plaintiff, however, but on whether it materially

affected concrete terms of employment. *Cf. Burlington*, 548 U.S. at 68 (even for retaliation

claims, "a plaintiff must show that a reasonable employee would have found the challenged

action materially adverse"). The letters did not materially affect Ms. Edwards-Yu's terms and

conditions of employment.

The Court concludes the Letters of Warning here do not rise to the level of an adverse

employment action. Accordingly, Ms. Edwards-Yu has not met this element of a prima facie

case.

iii.    Similarly Situated Employees

"[I]ndividuals are similarly situated when they have similar jobs and display similar

conduct." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003), *as amended*

(Jan. 2, 2004). To meet this element of a prima facie discrimination claim, a plaintiff must show

she was "similarly situated to [employees receiving more favorable treatment] in all material respects." *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006).

Ms. Edwards-Yu argues Mr. Vo disciplined her "based on behavior that the other supervisors also exhibited." (Pl.'s Resp. at 13.) Ms. Edwards-Yu cites no evidence that other supervisors exhibited the same behavior described in the Letters of Warning. Ms. Edwards-Yu stated in her declaration that fellow "supervisor, Anna Marrero, was actually the person who said she would make the pay adjustment and failed" to do so. (Pl. Decl. at ¶ 16.) In the August 2019 Letter, Mr. Vo acknowledged that Ms. Edwards-Yu "stated you assumed [Ms. Marrero] completed the pay adjustment, however this task was assigned to you and it is your responsibility to complete the task in a timely manner." (August 19 Letter at 3.) Ms. Edwards-Yu provides no evidence to rebut this information. Because the task was Ms. Edwards-Yu's, Ms. Marrero did not display similar conduct, even if she said she would perform the task for Ms. Edwards-Yu. Even if Ms. Marrero's conduct was similar in this instance, there is no evidence she engaged in the other conduct described in the Letters of Warning. She thus was not similarly situated in all material respects.

Ms. Edwards-Yu presents no evidence that any other employees were similarly situated in all material respects. Accordingly, she has not satisfied the fourth element of a prima facie case, that similarly situated employees not in her protected classes were treated more favorably.

iv.      Summary

While Ms. Edwards-Yu has satisfied the first element of a prima facie case, she fails to satisfy the other three elements. Accordingly, the Court need not address whether, if the burden had then shifted to USPS, it would be able to establish legitimate non-discriminatory reasons for

its actions toward Ms. Edwards-Yu. The Court concludes summary judgment should be granted

with respect to Ms. Edwards-Yu's disparate treatment claim under Title VII.

### 2. *ADEA Claim*

Age discrimination claims face a higher threshold than Title VII claims. *Shelley v. Geren*,

666 F.3d 599, 607 (9th Cir. 2012) ("Unlike Title VII, the ADEA's text does not provide that a

plaintiff may establish discrimination by showing that age was simply a motivating factor.").

Disparate treatment claims may be established through either direct evidence or by applying "the

burden-shifting evidentiary framework of *McDonnell Douglas* to motions for summary judgment

on ADEA claims." *Shelley*, 666 F.3d at 607.

Ms. Edwards-Yu contends she has provided direct evidence of discriminatory motive.

(Pl.'s Resp. at 15.) She stated in her declaration that:

> [Mr.] Fontanilla [made] unwelcome comments about my age including references
> about my grandkids and telling me that at my age my "husband should take care of
> me." [Mr.] Fontanilla also stated that he wanted to retire in two years, but that he
> would "make sure that I retire before [he] ever does." Over the next few weeks,
> [Mr.] Fontanilla continued to make comments about my age in front of other
> people. I asked him to stop talking about my age, but he continued.

(Pl. Decl. at ¶ 9.) Ms. Edwards-Yu also claims Mr. "Vo often referenced my age and retirement

even after I asked him to stop." (*Id.* at ¶ 11.)

Direct evidence, in the context of an ADEA claim, is that which establishes that the

decisionmaker held a discriminatory attitude or motive toward the protected class, and that the

attitude or motive was "more likely than not a motivating factor" in an employment decision.

*Enlow v. Salem-Keizer Yellow Cab Co.*, 389 F.3d 802, 812 (9th Cir. 2004) (internal quotation

marks and citation omitted). "Direct evidence, which standing alone can defeat summary

judgment, must be evidence directly tied to the adverse employment decision." *France v.*

*Johnson*, 795 F.3d 1170, 1173 (9th Cir. 2015), *as amended on reh'g* (Oct. 14, 2015). "In

1    contrast, stray remarks not directly tied to the decisionmaking process are not direct evidence

2    capable of defeating summary judgment." *Id.*

3        In *France*, because the plaintiff "presented both some direct evidence and some

4    circumstantial evidence," the court concluded it would be "most appropriate to consider the

5    propriety of summary judgment under the *McDonnell Douglas* framework." 795 F.3d at 1173. In

6    that case, a superior "had repeated retirement discussions with [plaintiff], despite [plaintiff's]

7    clear indications that he did not want to retire." *Id.* at 1172. These "repeated retirement

8    discussions with [plaintiff] are not direct evidence . . ., but rather circumstantial evidence

9    showing [the superior's] bias in his decisionmaking process." *Id.* at 1173. However, the

10   superior's "preference for 'young, dynamic agents' . . . probably goes beyond a stray remark,

11   although standing alone this evidence would be thin support to create a genuine dispute of

12   material fact." *Id.* (internal citation omitted).

13       Here, there is no evidence of anything like the comments in *France*, directly expressing a

14   preference for younger employees. Mr. Fontanilla's and Mr. Vo's comments about age and

15   retirement, while unwelcome, are not direct evidence of age discrimination because they were

16   not directly tied to the decisionmaking process of issuing discipline, the adverse action Ms.

17   Edwards-Yu alleges. Even if the comments reflect a discriminatory motive, there is no evidence

18   tying that motive to an adverse action. Accordingly, the Court applies the *McDonnell Douglas*

19   framework.

20       A plaintiff can establish a prima facie case of disparate treatment by demonstrating the

21   same four elements as in a Title VII claim, with the protected class being that she was at least

22   forty years old. *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). There is

23   no dispute that Ms. Edwards-Yu is at least forty years old. However, as considered above, she

1    has failed to present sufficient evidence to create a genuine issue of material fact as to whether

2    she performed her job satisfactorily, an adverse employment action was taken against her, or

3    similarly situated employees were treated more favorably.

4        Because Ms. Edwards-Yu has failed to establish a prima facie case of discrimination, the

5    Court concludes summary judgment should be granted dismissing her age discrimination claim.

6            *3.    Rehabilitation Act Claim*

7        "[T]he Rehabilitation Act prohibits discrimination 'solely by reason of [an individual's]

8    disability.'"[5] *Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945, 952 (9th Cir. 2020)

9    (quoting 29 U.S.C. § 794(a)). In a "Reasonable Accommodation Request" form, Ms. Edwards-

10   Yu identified her disabilities as "depression, anxiety, and lumbar spinal stenosis." (Leach Decl.,

11   Ex. 14 (dkt. # 42-14).)

12            i.    Disparate Treatment

13       To present a prima facie disability discrimination claim under the Rehabilitation Act,

14   plaintiff must show that: (1) she is disabled, (2) she is otherwise qualified, *i.e.*, able to perform

15   the essential functions of the job with or without reasonable accommodation, and (3) she

16   suffered discrimination because of her disability. *See Walton*, 492 F.3d at 1005, *superseded on*

17   *other grounds by statute as recognized in Nunies*, 908 F.3d at 434.

18       USPS contends there is no evidence of the third element. (Def.'s Mot. at 13.) Ms.

19   Edwards-Yu contends Mr. Vo's statement that "If I knew you have FMLA, I would not have

20   hired you" is direct evidence of discriminatory motive. (Pl. Decl. at ¶ 11; Pl.'s Resp. at 14-15.)

21   Ms. Edwards-Yu believes this statement was "in reference to FMLA leave that [she] had taken at

22

23   _____

[5] The Americans with Disabilities Act is "similar in substance to the Rehabilitation Act, and 'cases
interpreting either are applicable and interchangeable.'" *Douglas v. Cal. Dep't of Youth Auth.*, 285 F.3d
1226, 1230 (9th Cir. 2002) (quoting *Allison v. Dep't of Corrs.*, 94 F.3d 494, 497 (8th Cir. 1996)).

various times during [her] employment at USPS prior to joining [Mr.] Vo's Tour 2." (Pl. Decl. at ¶ 11.) However, having FMLA or taking FMLA leave is not a disability, nor is it necessarily proof of a disability, as employees can take leave to care for family members. Ms. Edwards-Yu contends Mr. Vo's statement was "made by Plaintiff's decisionmaker and explicitly referenced employment decisions he makes as Plaintiff's supervisor." (Pl.'s Resp. at 15.) However, the statement does not clearly reference disability, and thus, is not direct evidence of discrimination.

Because Ms. Edwards-Yu has not presented evidence of discrimination based on her stated disabilities of depression, anxiety, or lumbar spinal stenosis, she has not established a prima facie discrimination claim. The Court concludes summary judgment should be granted with respect to disparate treatment under the Rehabilitation Act.

ii.      Failure to Accommodate

Under the Rehabilitation Act, the burden initially rests on the plaintiff to prove she is a "qualified handicapped individual" and to make a "facial showing that reasonable accommodation is possible." *Buckingham v. United States*, 998 F.2d 735, 739-40 (9th Cir. 1993). If the plaintiff makes the requisite showing, the burden shifts to the employer to demonstrate that the requested accommodation would impose "an undue hardship" on its operations. *See id*.

USPS contends Ms. Edwards-Yu's requested accommodations were unreasonable. (Def.'s Reply at 11.) Ms. Edwards-Yu contends USPS had "a mandatory obligation to engage in an interactive process" to identify reasonable accommodations. (Pl.'s Resp. at 21 (citing *Anthony v. Trax Int'l Corp.*, 955 F.3d 1123, 1134 (9th Cir. 2020)).)

In her Reasonable Accommodation Request form, Ms. Edwards-Yu wrote that her disabilities impaired her ability to work as follows:

> I am unable to perform my duties for fear of my manager citing me for problems that occur and taking administrative actions against me. The constant stress of

anticipating investigative interviews caused me to lose my concentration many times and caused me headaches and stomach[ache]s.

(Leach Decl., Ex. 14.) Asked for specific accommodation that would enable her to perform her job, Ms. Edwards-Yu wrote:

> [R]emove all discipline. Stop the harassment and treat me with dignity and respect. Stop overloading me with too many sections. Assign me to another tour with a different manager. Assign me to a different EAS position in a local facility. Provide me with all the training and mentoring needed to ensure my success. . . . If none of the above requests can be met, then I would like to request assignment to an EAS administrative position.

*Id.* at 2-3.

"[O]nce an employee requests an accommodation . . ., the employer must engage in an interactive process with the employee to determine the appropriate reasonable accommodation." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002). "An employee is not required to use any particular language when requesting an accommodation but need only 'inform the employer of the need for an adjustment due to a medical condition.'" *Id.* Ms. Edwards-Yu has presented evidence that she requested accommodation.

"Employers, who fail to engage in the interactive process in good faith, face liability for the remedies imposed by the statute *if* a reasonable accommodation would have been possible." *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1137-38 (9th Cir. 2001) (emphasis added). Accordingly, "failure to engage in the interactive process is not itself evidence of failure to reasonably accommodate. There must first exist a reasonable accommodation that will enable the employee to perform the essential functions of the position." *Yonemoto v. McDonald*, 114 F. Supp. 3d 1067, 1114 (D. Haw. 2015), *aff'd sub nom. Yonemoto v. Shulkin*, 725 F. App'x 482 (9th Cir. 2018) (quoting *Kramer v. Tosco Corp.*, 233 F. App'x 593, 596 (9th Cir. 2007)).

1        It is plaintiff who has the "burden to prove the existence of reasonable accommodations

2   that would enable her to perform the essential job functions of her position." *Dunlap v. Liberty*

3   *Nat. Prod., Inc.*, 878 F.3d 794, 799 (9th Cir. 2017). Ms. Edwards-Yu has not met this burden.

4        Ms. Edwards-Yu contends "[s]ome, if not all," of the accommodations she suggested in

5   her Reasonable Accommodation Request form were reasonable, but does not specify or clarify

6   any of them. (Pl.'s Resp. at 21.) USPS contends none were reasonable. (Def.'s Reply at 11-12.)

7   The Court agrees. Removing past disciplinary records is not a disability accommodation because

8   it does not enable an employee to perform essential job functions. An end to harassment and

9   treatment with dignity and respect also do not appear to target any particular disability. Reducing

10  the number of sections assigned appears to be a request to reduce the essential functions of the

11  job or reallocate them to other supervisors. *See Dark v. Curry County*, 451 F.3d 1078, 1089 (9th

12  Cir. 2006) ("The ADA does not require an employer to exempt an employee from performing

13  essential functions or to reallocate essential functions to other employees.") Assignment to a

14  different position under another manager or in another local facility is not a reasonable

15  accommodation without evidence that such positions existed. *See id.* at 1089-90 ("[I]n

16  considering reassignment as a reasonable accommodation, an employer must consider not only

17  those contemporaneously available positions but also those that will become available within a

18  reasonable period.").

19       Finally, Ms. Edwards-Yu does not explain how providing unspecified training and

20  mentoring would accommodate her disability. *See Johnson v. Bd. of Trustees of Boundary Cnty.*

21  *Sch. Dist. No. 101*, 666 F.3d 561, 566 n.6 (9th Cir. 2011) ("[E]mployer is not required to provide

22  a disabled individual 'training that will equip her with the qualifications for the job . . . that at

23  present she lacks.'") (quoting *Williams v. United Ins. Co. of Am.*, 253 F.3d 280, 282 (7th Cir.

2001)). Ms. Edwards-Yu cites Mr. Vo's deposition testimony regarding training. (Pl.'s Resp. at 21 (citing Vo Dep. (Leach Decl., Ex. 1 (dkt. # 42-1)) at 125:13-25).) Mr. Vo testified that "before you become a supervisor, the postal service would train a supervisor to do the job . . . [W]e all have to take all that class[.]" (Vo Dep. at 125:4-125:5.) If a supervisor did not know how to do a particular job duty, he testified, "We could request to take the class again[.]" (*Id.* at 126:14-126:15.) This is evidence that Ms. Edwards-Yu could access training herself, without an accommodation.

Because Ms. Edwards-Yu has not met her burden to present evidence that a reasonable accommodation existed, the Court concludes summary judgment should be granted with respect to her failure to accommodate claim.

## C.    Constructive Discharge

Ms. Edwards-Yu next appears to either assert a separate claim for constructive discharge, or to contend that constructive discharge was an adverse action.[6] (Pl.'s Resp. at 16, 21-22.) "Constructive discharge is found where a working environment is so intolerable and discriminatory as to justify a reasonable employee's decision to leave." *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000) (cleaned up).

Ms. Edwards-Yu argues that "unwarranted discipline, discriminatory comments, and months of harassment that [USPS] did not investigate or remedy" constitute evidence that she was constructively discharged. (Pl.'s Resp. at 22.) However, as considered above, Ms. Edwards-Yu fails to present evidence that the discipline was unwarranted, or that the comments were discriminatory rather than just unwelcome.

---

[6] The Second Amended Complaint states "Plaintiff alleges complaints . . . for constructive discharge" but does not mention constructive discharge among the causes of action. (*See* SAC at ¶¶ 1.1, 6.1-6.15.)

Harassment appears to refer to yelling and intimidation, but Ms. Edwards-Yu presents no evidence regarding how often this occurred or how it made her work environment intolerable to a reasonable employee. She testified that Mr. Fontanilla "yelled at [her] in the workplace and singled [her] out on multiple occasions" and Mr. Vo "repeatedly yell[ed]" at her. (Pl. Decl. at ¶¶ 9, 11.) She testified she was subjected to "constant yelling, intimidation, and investigations" by Mr. Vo and Mr. Fontanilla, but only identifies three instances of yelling and/or intimidation. (*Id.* at ¶¶ 14, 15, 18, 23.) *Cf. Vasquez*, 349 F.3d at 642-43 ("[Plaintiff] claims that [his manager] continually harassed him but provides specific factual allegations regarding only a few incidents."). Being yelled at three times over the course of three years does not demonstrate an intolerable work environment.

The cases Ms. Edwards-Yu cites do not hold otherwise. *See Wakefield v. N.L.R.B.*, 779 F.2d 1437, 1439 (9th Cir. 1986) (constructive discharge based on threats, intimidation, and a physical assault); *Satterwhite v. Smith*, 744 F.2d 1380, 1381 (9th Cir. 1984) (constructive discharge where employer "regularly promoted white men ahead of" Black plaintiff on pretextual basis for months). In *Nolan*, four instances of discrimination over two years raised a genuine issue of material fact over whether the plaintiff was constructively discharged. *Nolan v. Cleland*, 686 F.2d 806, 813 (9th Cir. 1982) (plaintiff's "career was punctuated with numerous adjudicated instances of discrimination which culminated in her departure"). Here, Ms. Edwards-Yu has not demonstrated even one instance of discrimination. The Court concludes summary judgment should be granted with respect to a claim of constructive discharge.

### D.    Hostile Work Environment (Title VII, ADEA)

"When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and

create an abusive working environment, Title VII is violated." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations and quotation marks removed); *see also Sischo-Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1109 (9th Cir. 1991), *superseded by statute on other grounds as recognized by Dominguez-Curry v. Nev. Transp. Dept.*, 424 F.3d 1027 (9th Cir. 2005) (recognizing hostile work environment claim under ADEA). A plaintiff must show that the working environment both was subjectively perceived and would objectively be perceived by a reasonably employee as abusive. *Harris*, 510 U.S. at 21-22.

To prevail on a hostile work environment claim, plaintiff must prove that: (1) she was subjected to verbal or physical conduct because of her race, national origin, sex, age, or disability; (2) the conduct was unwelcome; and (3) the conduct was so severe or pervasive as to alter the conditions of employment and create an abusive environment. *Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 647 (9th Cir. 2021). Ms. Edwards-Yu's hostile work environment claims fail on both the first and third elements. On the first element, as discussed above, she has not presented evidence of conduct that she was subjected to specifically because of her protected characteristics.

In addition, Ms. Edwards-Yu fails to present evidence that the conduct was so severe or pervasive as to create an abusive environment. To determine whether an environment is sufficiently hostile or abusive, courts must consider "all the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Christian v. Umpqua Bank*, 984 F.3d 801, 809 (9th Cir. 2020) (quoting *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1095 (9th Cir. 2008)).

1    Ms. Edwards-Yu only presents evidence of three episodes of yelling or intimidation. (Pl.

2    Decl. at ¶¶ 14, 15, 18.) She also claims she was "assigned to operate the entire facility on [her]

3    own when other supervisors were not[,]" but does not indicate this happened with any frequency.

4    (*Id.* at ¶ 23; Pl.'s Resp. at 18.) Even taken together, this handful of incidents is not evidence of a

5    pervasively abusive environment. *Cf. Manatt v. Bank of America, NA*, 339 F.3d 792, 799 (9th

6    Cir. 2003) (multiple occasions of racist comments and gestures over two and a half years of

7    employment insufficient to create a hostile work environment); *Vasquez*, 349 F.3d at 643 (over

8    the course of more than one year, two racist comments, two instances of being yelled at, and two

9    allegedly false accusations insufficient to show hostile work environment).

10    Ms. Edwards-Yu has not presented evidence sufficient to create genuine issues of

11    material fact regarding the first or third elements of a hostile work environment claim. The Court

12    concludes summary judgment should be granted dismissing her hostile work environment

13    claims.

14    **E.    Retaliation (Title VII, ADEA)**

15    Ms. Edwards-Yu asserts retaliation claims under Title VII and ADEA. (SAC at

16    ¶¶ 6.7-6.10, 6.14-6.15.) She stated in her declaration that she "filed an informal EEO complaint

17    on or around August 12, 2019," and in September 2019 Mr. Vo "confronted [her] and was

18    visibly upset. He asked [her] what [she] hoped to accomplish by filing an EEO and then stated,

19    'You think I'm scared of EEO?!'" [7] (Pl. Decl. at ¶¶ 17-18.)

20    To establish a prima facie case of retaliation under Title VII or ADEA, a plaintiff must

21    demonstrate: "(1) a protected activity; (2) an adverse employment action; and (3) a causal link

22

23

---

[7] Ms. Edwards-Yu contends "she filed her EEO complaints in August of 2019, November 2019, and June 2020" (Pl.'s Resp. at 20), but points to no evidence of the latter two complaints.

REPORT AND RECOMMENDATION - 21

1    between the protected activity and the adverse employment action." *Cornwell v. Electra Cent.*

2    *Credit Union*, 439 F.3d 1018, 1034-35 (9th Cir. 2006); *see Gomez-Perez v. Potter*, 553 U.S. 474,

3    491 (2008) (ADEA "prohibits retaliation against a federal employee who complains of age

4    discrimination"). Once a plaintiff establishes a prima facie case, the burden then shifts to the

5    defendant to "articulate a legitimate nondiscriminatory reason for its decision." *Ray v.*

6    *Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000).

7          Here, the first element is satisfied. There is no dispute Ms. Edwards-Yu engaged in

8    protected activity, at least by filing an EEO complaint on August 12, 2019. (Pl. Decl. at ¶ 17.)

9    Meetings between Mr. Messenger and Ms. Edwards-Yu's EEO representative on September 26,

10    2019, and October 17, 2019, also appeared to address complaints of harassment and thus

11    constitute protected activity. (*See* Messenger Dep. (Leach Decl., Ex. 6 (dkt. # 42-6)) at

12    155:1-155:5, 159:12-160:9; Leach Decl. (dkt. # 42) at ¶ 11, Ex. 10 (dkt. # 42-10).) Ms.

13    Edwards-Yu also argues taking FMLA leave was a protected activity. (Pl.'s Resp. at 20.) An

14    employee engages in protected activity by opposing a discriminatory employment practice or

15    participating in a related investigation or proceeding. *See* 42 U.S.C. § 2000e-3(a); *Thomas v. City*

16    *of Beaverton*, 379 F.3d 802, 812 (9th Cir. 2004). Taking FMLA leave does not qualify as a

17    protected activity under Title VII or ADEA.[8]

18          On the second element, USPS does not dispute that the Letters of Warning were adverse

19    employment actions. In the retaliation context, an adverse action is one that a reasonable

20

21    [8] To the extent Ms. Edwards-Yu may be asserting a claim under FMLA, she has not presented supporting
      evidence. To prevail on a claim under FMLA anti-interference provisions, a plaintiff must "prove by a
22    preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in
      the [adverse employment action]." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1125 (9th Cir.
23    2001). Ms. Edwards-Yu shows no evidence of a connection between Mr. Vo's statement about her FMLA
      leave and the Letters of Warning. For an FMLA anti-retaliation claim, Ms. Edwards-Yu would have to
      show discrimination "for instituting or participating in FMLA proceedings or inquiries." *Id.* at 1124.
      There is no evidence of an FMLA proceeding or inquiry.

1    employee would find "materially adverse, which in this context means it well might have

2    dissuaded a reasonable worker from making or supporting a charge of discrimination."

3    *Burlington*, 548 U.S. at 67-68.

4        On the third element, USPS contends there is no causal link between Ms. Edwards-Yu's

5    protected activities and the Letters of Warning. (Def. Mot. at 17-18.) Ms. Edwards-Yu contends

6    Mr. Vo's April 2019 statement that "If I knew you have FMLA, I would not have hired you" is

7    direct evidence of retaliatory motive. (Pl. Decl. at ¶ 11; Pl.'s Resp. at 20.) She does not, however,

8    bring her retaliation claim under the FMLA statute. Mr. Vo's statement does not indicate animus

9    based on any Title VII or ADEA protected characteristic.

10       Ms. Edwards-Yu next argues causation can be inferred from the temporal proximity

11   between her complaints and the Letters of Warning. (Pl.'s Resp. at 20.) Causation "may be

12   inferred from 'proximity in time between the protected action and the allegedly retaliatory

13   employment decision.'" *Henderson*, 217 F.3d at 1244 (quoting *Yartzoff*, 809 F.2d at 1371). In

14   *Henderson*, the plaintiff "established a causal link between his protected activity and the

15   employment actions by demonstrating that each action was implemented close on the heels of his

16   complaints." *Id*. The harassing manager in that case began threatening adverse employment

17   actions as soon as he learned of the complaints against him. *Id.* at 1238. Although it was several

18   months before the threats were carried out, the harasser in the meantime "publicly berated [the

19   plaintiff] on a regular basis" and repeated the threats. *Id.*

20       USPS argues that the allegedly harassing behavior began before Ms. Edwards-Yu "first

21   engaged in protected activity and thus could not have been caused by or motivated by a desire to

22   retaliate against her for engaging in protected activity[.]" (Def.'s Mot. at 16.)

23

Protected activity occurred in 2019 on August 12, September 26, and October 17. Letters of Warning were issued in 2019 on June 19, August 11, and October 20. Because the first two Letters were issued prior to any protected activity, they could not have been caused by the protected activity. Mr. Vo issued the October 2019 Letter three days after the October 17 meeting between Ms. Edwards-Yu's EEO representative and Mr. Messenger. While the timing could suggest a retaliatory motive, Ms. Edwards-Yu identifies no evidence that Mr. Vo knew of that meeting, or the September 26 meeting. Thus Ms. Edwards-Yu must show that Mr. Vo issued the Letter of Warning on October 20, 2019, in retaliation for her EEO complaint filed August 12, 2019.

However, the October 2019 Letter does not demonstrate any change in Mr. Vo's behavior toward Ms. Edwards-Yu. Mr. Vo issued a letter on June 19, 2019, citing conduct occurring May 13 to June 5, 2019. (Jun. 2019 Letter at 2.) He issued a second letter on August 11, 2019, citing conduct occurring June 26 to July 10, 2019. (Aug. 2019 Letter at 2.) He issued the third letter on October 20, 2019, citing conduct from August 16 to September 18, 2019. (Oct. 2019 Letter at 2.) Ms. Edwards-Yu has presented no evidence that Mr. Vo's actions were any different after her August 12, 2019 EEO complaint. "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013). Ms. Edwards-Yu has thus failed to satisfy the third element of a prima facie retaliation claim.

Because Ms. Edwards-Yu fails to establish a prima facie case of retaliation, the Court concludes summary judgment should be granted with respect to her retaliation claims.

1

### III.    CONCLUSION

2    For the foregoing reasons, the Court recommends Defendant's Motion (dkt. # 27) be

3  GRANTED and that Plaintiff's Second Amended Complaint (dkt. # 44) and this action be

4  DISMISSED. A proposed Order accompanies this Report and Recommendation.

5    Objections to this Report and Recommendation, if any, should be filed with the Clerk and

6  served upon all parties to this suit within fourteen (14) days of the date on which this Report and

7  Recommendation is signed. Failure to file objections within the specified time may affect your

8  right to appeal. Objections should be noted for consideration on the District Judge's motions

9  calendar for the third Friday after they are filed. Responses to objections may be filed within

10  fourteen (14) days after service of objections. If no timely objections are filed, the matter will be

11  ready for consideration by the District Judge on **October 21, 2022**.

12    Dated this 4th day of October, 2022.

13

14  _____
    MICHELLE L. PETERSON
15  United States Magistrate Judge

16

17

18

19

20

21

22

23